UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Covanta Hennepin Energy Resource Co., LLC, | Case No.: _____ |
| Plaintiff, | |
| v. | |
| The County of Hennepin, | |
| Defendant. | |

**VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiff Covanta Hennepin Energy Resource Co., LLC ("Covanta"), as and for its Complaint against the County of Hennepin ("Hennepin County" or the "County"), by and through its undersigned counsel, states and alleges as follows:

## INTRODUCTION

1. This action has been brought to remedy Hennepin County's breach of a contract with Covanta for services to the Hennepin Energy Recovery Center ("HERC"), a waste-to-energy facility in downtown Minneapolis, Minnesota. Covanta has managed and operated the HERC for 27 years under contract with Hennepin County. The current iteration of the parties' contract was executed in 2003 after Hennepin County purchased the facility. The Contract provisions that the County breached governed Covanta's options to extend the Contract's term by a total of 7 years beyond the initial performance period, which will end in March 2018. After Covanta notified Hennepin County that it would be exercising these extension options, the County was explicitly required under the Contract to negotiate in good faith a fair market Service Fee for the extension

period.  Only in the event that these Service Fee negotiations failed, the County had the right to solicit alternate proposals from other vendors to determine a fair market Service Fee that Covanta could either take or leave.  But the Contract specified that any of these County-solicited alternate proposals had to be for the same scope of work performed by Covanta.

2. Hennepin County not only refused to negotiate a new Service Fee with Covanta, it also sabotaged the negotiations by insisting that Covanta agree to an entirely new set of contract terms that were much more burdensome than its existing agreement.  The County thus improperly drove the negotiations far beyond the sole issue the parties were required to decide:  the fair market value of Covanta's Service Fee for the extension period.

3. Additionally, after failing to even respond to Covanta's multiple Service Fee proposals with anything more than a flat rejection, the County announced that it was ceasing negotiations and would seek alternate proposals from other vendors. The County then breached the extension provisions of the Contract a second time in its attempt to solicit the alternate proposals.  While the Contract restricted the County from seeking or accepting proposals for anything other than the operating services being provided by Covanta under the Contract, the alternate proposal it ultimately selected—and now seeks to award as early as September 22, 2016—was for an entirely different scope of work and a much shorter term than the Covanta Contract.

## PARTIES

4. Plaintiff Covanta Hennepin Energy Resource Co., LLC is a Delaware limited liability company whose sole member is Covanta Projects, LLC, another Delaware limited liability company domiciled in Delaware.

5. Defendant County of Hennepin is a political subdivision of the State of Minnesota.

**JURISDICTION & VENUE**

6. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Covanta and Hennepin County, and the amount in controversy exceeds $75,000.

7. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTUAL ALLEGATIONS**

8. The Hennepin Energy Recovery Center is a waste-to-energy facility located in Minneapolis, Minnesota. The purpose of the HERC is to convert solid waste into electricity through combustion.

9. Covanta has managed and operated the HERC since it opened in October 1989, pursuant to an agreement entered into with Hennepin County in August 1985.

10. On May 30, 2003, Hennepin County assumed ownership of the HERC pursuant to a Facility Purchase Agreement.

11. On July 1, 2003, after purchasing the facility, Hennepin County entered into an amended and restated contract with Covanta to continue managing and operating the HERC, numbered A03625 (the "Contract"). The Contract superseded the original agreement between the parties. A true and correct copy of the Contract is attached hereto as Exhibit A.

*Terms of the Contract*

12. Covanta's general scope of work under the Contract is to operate, manage, and maintain the HERC.

13. Hennepin County was required to pay Covanta a "Service Fee", as defined in the Contract, in exchange for these services. The Service Fee was calculated by adding together

several different objective and well-defined values, including an operating charge, values based upon the amount of waste that is processed, a value based upon energy revenue, values based upon losses to Covanta that the county was responsible to pay, and certain pass-through operating costs.

14. The Contract's initial term was from July 8, 2003 to March 2, 2018.

15. Article 12.02 of the Contract granted Covanta options to extend the Contract by a total of 7 years over 2 separate extension periods.

16. The first option allowed Covanta to extend the Contract term by 2 years. To exercise the option, Covanta was required to notify Hennepin County 4 years before the end of the initial term on March 2, 2018.

17. The second option allowed Covanta to extend the Contract for an additional 5 years beyond the first extension period. To exercise this option, Covanta was required to notify Hennepin County 2 years before the end of the initial performance period.

18. No more than 90 days following Covanta's notice of an extension, Paragraph 12.02(B) ("Paragraph B") of the Contract required the parties to "commence negotiations in good faith of a ***fair market value Service Fee*** for the disposal of Solid Waste to be effective during the relevant extension period." Exhibit A at 41 (emphasis added).

19. After negotiations commenced, Paragraph B mandated a 6-month negotiation period for the parties to agree upon a new Service Fee. If the parties failed to agree upon a Service Fee during that time, the County had the right to either (1) proceed to arbitration under Paragraph 12.02(C) of the Contract, in which case the sole issue for the arbitrator would be to determine a fair market value Service Fee for the relevant extension period, or (2) proceed under Paragraph 12.02(D) ("Paragraph D") of the Contract and solicit alternate proposals for "***the operating services provided under***" the Contract. *Id.* at 41-42 (emphasis added).

4

20. If the County chose to arbitrate the issue of the Service Fee, then the arbitrator was required to consider the following objective factors to determine a fair market value for the Service Fee through the extension period: "(i) the lack of any debt service payment due from [Covanta] during the extended period, (ii) the actual cost of operating and maintaining the Facility over the previous five years of the Term and the projected costs for the extended term; (iii) a reasonable profit to [Covanta] based on capital invested in the Facility, and (iv) the profit earned by [Covanta] from the Facility during the previous five years of the Term." *Id.* at 41. The arbitrator's decision would be "binding on the parties for the relevant extension period." *Id.*

21. If the County instead pursued its options under Paragraph D and received an acceptable proposal from a qualified provider for the "operating services provided under" Covanta's Contract, then the County was required to notify Covanta of the terms. If Covanta refused the proposed terms, then the Contract would not be extended, and the County could contract with the third-party qualified provider. But if Covanta agreed within 30 days to perform the operating services under its current Contract on the same or better terms than the alternate provider, then the Contract would be extended for the relevant period under those terms.

*The County Refuses to Negotiate in Good Faith a New Service Fee.*

22. On February 28, 2014, Covanta properly gave written notice to Hennepin County that it was exercising its option to extend the Contract.

23. Hennepin County responded that it was prepared to commence negotiations on May 14, 2014 (which was within the 90-day period beginning February 28, 2014). The parties then planned a short in-person meeting for June 9, 2016, and attended the same.

24. Due to medical problems of a key Hennepin County employee, further negotiations were delayed until September 2014, roughly 4 months into the 6-month negotiation period.

25. On September 10, 2014, Hennepin County sent Covanta its first proposal. But rather than providing a proposed Service Fee, the County instead proposed that Covanta agree to an entirely new agreement.

26. In particular, the County sent Covanta a lengthy "new term sheet" as part of the negotiation. The term sheet was essentially an entirely new agreement, shifting many risks, liabilities, and responsibilities to Covanta that were previously taken on by the County, eliminating revenue sources that were previously available to Covanta, and granting the County discounts that were previously unavailable to it.

27. Additionally, the new term sheet was for a term beginning January 1, 2015 and ending March 2, 2025.

28. The County's September 10, 2014 term sheet was thus completely outside the scope of the required negotiations under the contract. First, while Paragraph B only required negotiations surrounding the extension period, the term sheet was to become effective January 1, 2015—over 3 years before the extension period would begin. Second, while the Service Fee was the only required topic of discussion under Paragraph B, the County's term sheet did not include any proposed amount for the Service Fee during the extension period.

29. The County made clear to Covanta from the beginning and throughout the parties' negotiations that it was not willing to limit the discussions to agreeing upon a new Service Fee, as required by Paragraph B, and that it would only reach agreement if Covanta agreed to an entirely new set of contract terms.

30. Covanta responded to Hennepin County on November 6, 2014 with a redlined version of the September 10 term sheet that rejected the most egregious terms. Covanta included within the term sheet a proposed Service Fee calculation formula.

31. Hennepin County rejected Covanta's responsive term sheet without a counter offer. In its rejection, the County did not propose any Service Fee amount.

32. On or around November 25, 2014, the parties agreed to extend the negotiation period to March 9, 2015.

33. On December 19, 2014, Covanta sent Hennepin County a letter summarizing a proposed set of basic terms, titled "Amended and Revised Service Agreement," that Covanta intended to address the non-negotiable points that Hennepin County wanted incorporated into an agreement. Covanta also incorporated by reference an agreement it had recently executed with Pinellas County, Florida that could be used as a possible model and possible starting point for negotiations because it did a much better job of balancing risk and performance criteria with payment than did the County's September 10, 2014 term sheet.

34. On January 21, 2015, Hennepin County sent a letter to Covanta rejecting the proposed terms of its December 19 letter. In its letter, the County again made clear that it would not limit its discussions to the Service Fee as required by Paragraph B of the Contract, stating: "the County is looking for a completely new Service Agreement and not just an amendment to the current service [sic] Agreement."

35. On January 22, 2015, Hennepin County sent Covanta a revised version of its September 10, 2014 term sheet. Again, the County failed to propose any amount for the Service Fee.

36. Covanta responded to the County with a redlined version of the revised term sheet on February 25, 2015, this time keeping nearly all of the County's proposed terms and adding a flat Service Fee proposal that was designed to compensate Covanta for its increased risk,

performance requirements, and lost revenue sources. Hennepin County rejected Covanta's redline without any counter-offer, once again failing to propose any amount for the Service Fee.

37. On March 4, 2015, Hennepin County notified Covanta that it was terminating negotiations and would solicit alternate proposals. Immediately after receiving the County's March 4, 2015 letter, however, Covanta requested that the County leave negotiations open for "a couple weeks" in a last ditch effort to come to an agreement, which the County agreed to do.

38. On April 24, 2015 Covanta sent Hennepin County a second redlined version of the January 22 term sheet, accepting more of the County's proposed terms. Hennepin County again rejected Covanta's redline version without any counter-offer, and once again failed to propose any amount for the Service Fee.

39. Covanta then presented a final Term Sheet Outline for the Service Agreement to Hennepin County on August 13, 2015, which made several more concessions from its April 24 proposed terms and reduced its flat Service Fee offer. Although the County noted Covanta's further concessions in an August 21, 2015 responsive letter, it rejected Covanta's proposal once more, again failing to make a Service Fee counter-offer.

40. At no time during the negotiation period, which lasted from May 14, 2014 to August 21, 2015, did Hennepin County ever offer or counter-offer a Service Fee amount.

***The County Improperly Attempts to Replace Covanta with an Alternate Vendor.***

41. On September 8, 2015, Hennepin County published a Request for Qualifications ("RFQ") for management, operation, and maintenance services to the HERC. The RFQ did not attach or reference the Contract with Covanta, but requested proposals from responders.

42. While this solicitation process was pending, Covanta timely notified Hennepin County on February 17, 2016, that it was exercising its second option to extend the Contract by a

8

period of 5 years.  Combined with its first extension option, Covanta had thus elected to extend the Contract by the full 7 years available under the Contract.

43. On February 22, 2016, the County responded with a letter stating, "Hennepin County has already provided you notice in our March 4, 2015 letter to Covanta, which indicated that the county is exercising our option to solicit alternate proposals for HERC operating services pursuant to Section 12.02(D) of the current agreement between Covanta and Hennepin County."

44. The County thus refused to engage in any negotiation process regarding the Service Fee for the second extension period, again violating the option provisions in Paragraph B of the Contract.

45. On August 21, 2016, Hennepin County accepted the terms of a proposed service agreement from GRE HERC Services, LLC ("GRE"), and notified Covanta that it had 30 days to agree to perform on the same or better terms.

46. The proposed GRE service agreement encompasses an entirely different scope of work than the Contract with Covanta, essentially eliminating management responsibilities on the part of the contractor, shifting various risks and liabilities to Hennepin County, replacing performance guarantees with performance guidelines, and substantially reducing the value of the contract.  For example, while the current Contract requires Covanta to manage the operation of the facility, the GRE agreement would replace that management with a five-member panel controlled by Hennepin County officials.  The GRE agreement also provides for operator compensation on a time and material basis and eliminates the performance guarantees and corresponding damage provisions in the Contract which ensure that the County will be compensated if the HERC does not process waste or produce energy due to operator fault.  In addition, while the Contract allows Covanta to perform all capital replacement projects (which include major maintenance and

9

equipment replacement) itself, and earn a defined profit for that work, the GRE proposal would eliminate the opportunity to perform that work and allow the County to outsource those projects at an additional cost. The proposed GRE contract is thus more akin to a mere labor contract, and bears little resemblance to either the terms of Covanta's original Contract or to the new terms the County attempted to impose on Covanta through the extension negotiation process. In short, the proposed GRE service agreement, if executed, would stand as a completely new contract with a markedly different scope of work.

47. Additionally, the GRE service agreement was only for a 16-month period, rather than the 7-year extension period under the Covanta agreement.

48. The estimated value of the proposed GRE contract is $25,473,000 for the 16-month term, or $19,104,750 annually. As a result, the amount to be paid by the County under the proposed agreement with GRE could potentially exceed both Covanta's current Service Fee under the Contract and Covanta's final proposed Service Fee during the parties' negotiations.

49. The Hennepin County Board then issued an Action Request finding that the GRE contract was acceptable and setting a deadline of September 22, 2016 at 5:00 p.m. for Covanta to either accept or reject its terms.

50. In the vote to approve the Action Request, Commissioner McLaughlin abstained, stating his discomfort with the contracting process leading up to the County's acceptance of the proposal from GRE.

## COUNT I: BREACH OF CONTRACT
## (ARTICLE 12.02(B))

51. Plaintiff restates and re-alleges the foregoing as if fully set forth herein.

52. After Covanta timely notified Hennepin County that it was exercising its option to extend the Contract into the first extension period, Hennepin County was required under Paragraph

10

B to negotiate in good faith *a fair market value Service Fee* for Covanta's performance of the first extension period.

53. Hennepin County never proposed or offered any amount for Covanta's Service Fee, but only rejected numerous service fee amounts proposed by Covanta.

54. The Contract extension Service Fee was the only term that the parties were required to discuss during the negotiation period, but Hennepin County held that term hostage and used the negotiation period instead to negotiate entirely new performance terms for the Contract.

55. In addition, the County's proposed terms would become effective over three years before the extension period began.  The County was thus attempting to force a modification to the current Contract before its expiration, rather than simply addressing the extension period as required by the Contract.

56. Further, the new terms Hennepin County attempted to impose on Covanta were entirely different than the terms the County accepted from GRE, suggesting that the new terms were intended to sabotage negotiations.

57. As a result of Hennepin County's conduct, negotiations between the parties regarding the extension period Service Fee failed.

58. Hennepin County thus failed to negotiate in good faith a fair market value Service Fee for the first extension period, in breach of its duties under the Contract.

59. Covanta has been damaged by Hennepin County's breach in an amount exceeding $75,000 to be proven at trial.

## COUNT II: BREACH OF CONTRACT
## (ARTICLE 12.02(D))

60. Plaintiff restates and re-alleges the foregoing as if fully set forth herein.

61. In the event that negotiations over an extension period Service Fee failed during the negotiation period, Paragraph D allowed Hennepin County to either proceed to arbitration to resolve a fair market value for the Service Fee, or else solicit alternate proposals for the *operating services provided under the Contract*.

62. After Hennepin County terminated the parties' negotiations under Paragraph B without ever proposing a Service Fee, it solicited alternate proposals for operating services to the HERC. The solicitation it issued, however, did not seek proposals for "the operating services provided under" its Contract with Covanta, as required by Paragraph D of the Contract.

63. As a result, GRE's proposal that Hennepin County accepted for services to the HERC was on entirely different terms than the Covanta Contract, and thus did not require the same operating services as the Covanta Contract as required by Paragraph D.

64. The GRE proposal also failed to align with the 7-year term of Covanta's extension periods, and instead covered a term of only 16 months. The GRE contract, if accepted, would thus deprive Covanta of more than 5½ years of work to which it was entitled under the option provisions of the Contract.

65. As a result of the GRE proposal's separate and distinct terms, the service fee under that proposal was not a fair market value Service Fee for the Covanta Contract.

66. Hennepin County thus breached its duty under Paragraph D of the Contract to solicit alternate proposals for the same operating services that were provided by Covanta under the Contract.

67. As a result of Hennepin County's breach, Covanta has been damaged in an amount exceeding $75,000 to be proven at trial.

## COUNT III: DECLARATORY JUDGMENT

68. Plaintiff restates and re-alleges the foregoing as if fully set forth herein.

69. Paragraph D of the Contract provides: "In the event the County and the Company fail to reach agreement during the six-month negotiation period described in paragraph (B) the County may elect to solicit alternate proposals for the *operating services provided under this Agreement*. If the County receives a proposal from a *qualified provider of the services* which it deems acceptable the County shall notify the Company of the terms thereof. If, within 30 days of the receipt of such notice the Company agrees to perform on the same or better terms, then *this Agreement shall be extended* on such terms." Exhibit A at 41 (emphasis added).

70. Paragraph D means that, if Hennepin County properly exercises its right to solicit alternate proposals, then the proposals it solicits must be for the same work as provided by Covanta under the Contract.

71. Nevertheless, Hennepin County has adopted a contrary interpretation of Paragraph (D): that it may solicit proposals for a scope of work far different than what is provided by Covanta under the Contract.

72. The correct interpretation of Paragraph D has an effect on the rights of the parties valued in excess of $75,000.

73. If the Court decides in favor of Covanta that Hennepin County breached Paragraph B of the Contract, and for that reason declines to address the parties' rights and obligations under Paragraph D, then the parties may end up re-litigating Paragraph D if Hennepin County ultimately resolicits the HERC Contract according to its erroneous interpretation of the Contract.

74. Therefore, in the event that the Court need not decide Plaintiff's claim for breach of Paragraph D because the Court finds a breach of Paragraph B, Covanta seeks a declaration of

the parties' rights and obligations under the contract with respect to Paragraph 12.02(D) of the Contract.

**WHEREFORE** Plaintiff Covanta Hennepin Energy Resource Co., LLC prays for judgment as follows:

a. For an award of damages against Defendant in excess of $75,000, the exact amount to be proven at trial;

b. Specific performance;

c. Declaratory relief;

d. Costs and disbursements;

e. Reasonable attorneys' fees as allowed by law; and

f. For such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff Covanta Hennepin Energy Resource Co., LLC hereby requests a trial by jury.

Respectfully submitted,

ECKLAND & BLANDO LLP

Dated: September 15, 2016

**s/ Mark J. Blando**
Mark J. Blando (# 309229)
Jared M. Reams (# 397159)
800 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
Telephone: (612) 236-0160
Facsimile: (612) 236-0179
Email: mblando@ecklandblando.com
          jreams@ecklandblando.com

*Attorneys for Plaintiff Covanta Hennepin Energy Resource Co., LLC*

## **VERIFICATION**

Patricia Collins, being first duly sworn upon oath, deposes and states that she is the Vice President of the sole member of the above-named plaintiff and is familiar with the facts and circumstances of this case, and that she has read the foregoing Verified Complaint, and based upon her personal knowledge, known the facts stated therein to be true, unless such fact is stated upon information and belief, in which case she believes it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This document was executed on September 15, 2016 in Morris County, New Jersey.

                                                    Covanta Hennepin Energy Resource Co., LLC
                                                    by its sole member Covanta Projects, LLC

                                                    **s/ Patricia Collins**
                                                    Patricia Collins, Vice President and Associate
                                                    General Counsel