```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                      Civil No. 16-3086(DSD/HB
```

Covanta Hennepin Energy
Resource Co., LLC,

       Plaintiff,

v.                                                  **ORDER**

The County of Hennepin,

       Defendant.

      Mark J. Blando, Esq., Jared M. Reams, Esq. and Eckland &
      Blando, LLP, 800 Lumber Exchnage, 10 South 5th Street,
      Minneapolis, MN 55402, counsel for plaintiff.

      Charles H. Salter, Esq., Jane N.B. Holzer, Esq. and Hennepin
      County Attorney's Office, 300 South 6th Street, Suite A-2000,
      Minneapolis, MN 55487, counsel for defendant.

This matter is before the court upon the partial motion to dismiss by plaintiff Covanta Hennepin Energy Resource Co., LLC. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

The background of this matter is set forth in the court's previous orders [ECF Nos. 23 & 38] and will not be repeated here except as necessary. For many years, Covanta has managed and operated the Hennepin Energy Recovery Center (HERC) under the parties' service agreement, the most recent version of which expires on March 2, 2018 (Service Agreement). The County sells

energy produced at the HERC to Xcel Energy - formerly Northern States Power (NSP) - under a power purchase agreement (PPA).[1] Under the Service Agreement, Covanta agreed to perform the County's obligations under the PPA as follows:

> The Company shall at all times during the Term of this Agreement, as agent for the County, perform all of the County's obligations under the [PPA] and shall enforce the terms of such agreements in accordance with good business judgement [sic], and shall otherwise act under such agreements in a manner designed to maximize Energy Sales Revenues under this Agreement.

Service Agreement, Art. 9.01. The County receives two-thirds of the revenue generated by sales under the PPA and Covanta receives the remaining one-third. Id. Sched. E at E-12.

Under the PPA, the County - and thus Covanta - agreed to sell Xcel "all energy produced or generated by the [HERC] up to the Committed Capacity ... less the electric power and electric energy necessary for the operation of the [HERC] subject to the provisions of Article V hereof."[2] PPA Art. 2.01(b). "Committed Capacity" is defined as the "amount of electrical capacity expressed in kilowatts (kw) rounded to the nearest 100 kw specified by [the

---

[1] The Service Agreement refers to the underlying agreement as the "NSP Agreement." As do the parties, the court will refer to the NSP Agreement as the PPA.

[2] Article V of the PPA, entitled "Continuity of Service," addresses excused non-performance or interruption of service. See id. Art. 5.01(a)-(b). It states that interruption in service will not constitute a breach of the agreement absent "willful refusal to deliver or receive power or energy." Id. Art. 5.01(d). The County does not allege that Covanta has wilfully refused to deliver power or energy to Xcel.

2

County] ... to be used in evaluation of [the County's] performance under Article 2 and [the rate schedule]." Id. Art. 1.06.

The rate paid by Xcel, and the amount the County and Covanta earn under the PPA, depends on several factors. Relevant here, the PPA establishes a "Committed Capacity Rate" based on a "Billing Capacity Factor." Id. Sched. II § 3(a). The Billing Capacity Factor is the "arithmetic average of the current and 23 previous Monthly Capacity Factors." Id. § 3(c). When the Billing Capacity Factor is less than 70%, the County receives a reduced rate for the energy produced by the HERC. Id. § 3(a).

Covanta had hoped to renew the Service Agreement before its upcoming expiration. In 2016, however, the County decided to contract with a third-party, GRE HERC Services, which will assume Covanta's role after the Service Agreement expires.[3]

On September 15, 2016, Covanta filed this suit alleging that the County breached the Service Agreement in its handling of the negotiations which ultimately led to the Agreement's non-renewal. After being denied injunctive relief by the court, Covanta filed an amended complaint. The court denied the County's subsequent motion to dismiss, after which the County filed an answer along with two counterclaims. ECF Nos. 38 & 40. The counterclaims allege that Covanta breached the Service Agreement by failing to (1) adequately

---

[3] The facts and circumstances leading to the County's decision are relevant to the case as a whole, but not to this motion and therefore will not be discussed.

3

maintain the HERC's cooling tower, and (2) meet capacity and sales obligations.  ECF No. 40 at 6-9.  Covanta now moves to dismiss the latter counterclaim.

**DISCUSSION**

**I.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6).  Fed. R. Civ. P. 12(d).  The court may, however, consider matters of public record and materials that are

4

"necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the Agreement and PPA are properly considered by the court.

## II. Breach of Contract

To establish a breach of contract claim under Minnesota law, the County must show formation of a contract, performance of any conditions precedent, a material breach by Covanta, and damages. MSK EyEs Ltd. v. Wells Fargo Bank, N.A., 546 F.3d 533, 540 (8th Cir. 2008). The County alleges that Covanta breached Article 9.01 of the Service Agreement by failing to (1) maintain contractually required capacity and sales levels, and (2) act in a manner designed to maximize energy sales revenues. ECF No. 40 at 8-9.

According to the County, when read together, the Service Agreement and the PPA required Covanta "to meet a 24 month rolling-average capacity factor of 70%." ECF No. 40 at 8 ¶ 10. Covanta acknowledges that, for a variety of reasons, it did not maintain a 70% average capacity, but denies that the contracts at issue required it to do so. The plain language of the Service Agreement and the PPA belie the County's position.[4]

---

[4] Because the contracts are unambiguous, "the parties' intentions as expressed in the four corners of the instrument" are controlling. Dayton Park Props, LLP v. Pac. Life Ins. Co., 370 F. Supp. 2d 869, 871 (D. Minn. 2005). The court therefore will not consider the documents submitted by the County.

5

The court has carefully reviewed both contracts and finds that neither imposes an obligation to maintain a 70% average capacity, either expressly or impliedly. To the contrary, the County and Xcel expressly contemplated that the capacity threshold would dip below 70% and accounted for that by agreeing to a lower rate per kilowatt when it did so. There is no language in the rate schedule or any other part of either contract obligating Covanta to meet a 70% capacity threshold. Indeed, as Covanta freely admits, over the last thirty years it has regularly failed to meet that threshold without any declaration of breach or default by Xcel or, until now, the County. As a result, the County cannot state a claim for breach of contract based on Covanta's failure to maintain a 70% capacity threshold. The County also fails to state a claim based on Covanta's alleged poor performance because that aspect of its counterclaim is also based on the argument that the contracts required Covanta to meet a 70% capacity threshold. Def.'s Opp'n Mem. at 8-11.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the partial motion to dismiss [ECF No. 48] is granted.

Dated: May 25, 2017

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court